## A. W. LONG v. WILLIAM HINES et al.

1. GOODS, *Subsequently Acquired— Void Mortgage.* A mortgage of subsequently acquired goods, or other property, having no connection with property actually in existence at the date of the mortgage, is void as against subsequent purchasers or attaching creditors.

2. UNPLANTED CORN— *Void Mortgage.* A chattel mortgage of a crop to be grown in the future, and which has not been planted at the date of its execution, although made by one in possession of land, is void as against subsequent purchasers or attaching creditors.

### *Motion for Rehearing.*

THE facts are stated in *Long v. Hines*, ante, p. 216; which case was decided at the session of the court in January, 1888. The defendants in error filed a motion for a rehearing, which the court overruled at its session in December, 1888, and then filed the opinion, *infra*.

The opinion of the court was delivered by

HORTON, C. J.: Upon the motion for rehearing in this case, it is earnestly and forcibly insisted that the law has been improperly declared in the syllabus and opinion already filed. We have reëxamined the whole question, and are satisfied with the judgment rendered. There are many decisions to the contrary, but we are not inclined to follow them. In our view they are not sustained by good reasons.

At the time of the execution and recording of the chattel mortgage of March 7, 1885, the forty-five acres of growing corn therein mentioned had not been planted; therefore this property was not owned by the mortgagor, nor did it have any actual existence. The general rule seems to be that a mortgage of goods or other personal property which the mortgagor does not own at the time of making or recording the mortgage, though he may afterward acquire them, is void in respect to such goods or property, as against subsequent purchasers, or attaching creditors. In *Cameron v. Marvin*, 26 Kas. 612, the court said:

"The next question is, with reference to the rights of the

parties to the property acquired by Patterson after the execution of all the mortgages. Of course this property was not included in the mortgages at the time of their execution. In fact, it could not have been included in the mortgages at that time, for it is not within the power of any person to mortgage property which does not exist or which does not belong to him. He cannot mortgage property which is afterward to be created, or purchased, or procured. He can only mortgage property which at the time is in existence, and to which he has a title. Parties may make contracts with reference to future acquired property, and contracts which will be legal and valid and will be upheld; but such contracts do not constitute chattel mortgages. They are simply executory contracts, to be performed in the future; and while they are binding upon the parties making them, they are void as to third persons who have no notice respecting them. They can never be treated as chattel mortgages affecting third persons. Such contracts, however, are always held valid as though they were chattel mortgages, as against third persons who have not in the meantime obtained any specific interest in the property when the mortgagee has obtained the possession of the property under the contracts.

"When a mortgagee takes possession of the future acquired property under such a stipulation in the mortgage, he then holds the property by way of pledge, but in the same manner as though the mortgage had been executed at the time he takes the possession of the property, and in the same manner as though he had taken the property under and by virtue of a chattel mortgage covering the property."

In *Barnard v. Eaton*, 56 Mass. 294, Chief Justice Shaw, speaking for the court, said:

"A mortgage is an executed contract; a present transfer of title, although conditional and defeasible; it can therefore only bind and affect property existing and capable of being identified at the time it is made; and whatever may be the agreement of the parties, it cannot bind property afterwards to be acquired by the mortgagor."

In *Chapman v. Weimer*, 4 Ohio St. 481, it was said:

"This mortgage not only undertakes to convey to Chapman the goods then on hand, but all the goods that Marvin might thereafter acquire; and it authorizes Chapman at any time thereafter when he might see proper to do so, to take possession

of not only the goods then owned by Marvin, but those which he might subsequently own. It may be safely said that Chapman did not, by the mere execution of this mortgage, acquire any legal title to or lien on such subsequently acquired property. But when, after the execution of the mortgage, and after the mortgagor has acquired title to property not owned by him nor in his power to deliver at the time of the execution of the mortgage, he does acquire the title and possession of such property, and actually delivers the same to the mortgagee, a very different question arises."

These decisions do not affect a chattel mortgage covering the increase of property. (*Corbin v. Kincaid*, 33 Kas. 649. See also Jones on Chattel Mortgages, 3d ed., § 138, and cases cited.)

It is contended, however, that the mortgage of unplanted crops is valid, upon the ground that they potentially exist at the date of the mortgage. Chief Justice Hobart is quoted in support of that position. In the recent case of *Cole v. Kerr*, 19 Neb. 553, in reviewing the decision of Chief Justice Hobart, it was said:

"Presumptious as it may seem to say so, I cannot agree to the proposition stated by Lord Hobart in the case cited by counsel for defendant in error, that the owner of the land, though he had not the future crop 'actually in view, nor certain, yet he had it potentially.' While it is true, as he adds, that 'the land is the mother and root of all fruits,' the word potentially, as defined by Craig, means 'in possibility, not in act, not positively; in efficacy, not in actuality.' With this definition in view it cannot be said that the mere ownership or possession of the soil carries with it the production of crops potentially. Soil alone does not produce crops of corn in this degenerate age, if it ever did. It now requires in addition to soil, seed and labor, both of man and beast. So that the proposition that a sale or mortgage of a crop of corn not yet planted carries with it a property in or lien upon such crop, to attach and come into efficacy without 'a new intervening act,' upon the crops coming into existence, carries with it the proposition that a man may mortgage his labor to be performed — something which I never heard contended for in this country, but which is a right which, under the name of peonage, is recognized in our sister republic to the south of us."

In *Butt v. Ellett*, 19 Wall. (U. S.) 544, Mr. Justice Swayne, speaking for the court, said:

"The mortgage in that case could not operate, because the crops to which it related were not then in existence."

In *Hutchinson v. Ford*, 9 Bush, 318, it is decided that—

"A mortgage of a crop to be raised on a farm during a certain term, passes no title if the crop was not sown when the mortgage was executed."

It was said in *Floyd v. Ricks*, 14 Ark. 286, that—

"The court will take judicial notice of the seasons, and of the general course of agriculture; and in that case the court took notice of the fact that a crop of corn could not have matured on the tenth of August so as to be severed from the soil; and it will take like notice, that at neither the date of the execution nor the recording of the mortgage was the crop upon which it was intended to operate planted or in being." (1 Greenl. Ev., § 5.)

It was also said in *Tomlinson v. McClure*, 31 Ark. 557:

"It is well settled, we think, that as the law was, previous to the act of February 11, 1875, making valid mortgages on crops to be planted, and when the mortgage in this case was executed, there could be no legal transfer, present or prospective, of property not in existence; and that a mortgage of such was without effect at law."

(See also *Comstock v. Scales*, 7 Wis. 546; *Millman v. Mahan*, 2 Barb. 28; *Barnard v. Eaton*, 2 Cush. [Mass.] 295.)

The motion for a rehearing will be overruled.

All the Justices concurring.