MORTON v. WILLIAMSON.

Opinion delivered April 30, 1904.

1. MORTGAGE—AFTER-ACQUIRED PROPERTY—VALIDITY.—A mortgage embracing "all the lumber and logs now on the ground, and all that may be put on the ground and sawed by us until final settlement of our account" with the mortgagees, being recorded, created a lien on any lumber subsequently manufactured at the mortgagors' mill, though not in existence when the mortgage was executed, until the mortgagees' account was finally settled. (Page 392.)

2. FRAUD—MORTGAGOR REMAINING IN POSSESSION.—A mortgage embracing the future product of a sawmill, and providing that the mortgagors should remain in possession and sell the lumber as it was manufactured, is not fraudulent on that account where it stipulated that, on default of payment or on removal of the property by the mortgagors, the mortgagees should take possession thereof, and where extraneous

proof showed that the mortgagors were allowed to sell lumber to other parties only when such parties would give more than the mortgagees, and that in such cases the mortgagees were to be the shippers, and the proceeds were to be sent directly to them by the purchaser. (Page 393.)

Appeal from Sevier Circuit Court.

WILL P. FEAZEL, Judge.

Affirmed.

### STATEMENT BY THE COURT.

This was an action originally brought in the Sevier circuit court, on the law side, by H. C. and E. Y. Williamson against R. H. Coleman, A. West and D. T. Morton to recover of the said defendant, D. T. Morton, the value of certain lumber appropriated by the said Morton, upon which the said Williamson Bros. had a mortgage. Thereafter the action was transferred to the equity docket. The mortgage upon which the appellees in this case base their right of recovery was executed and delivered to the defendants on the 21st day of August, 1898, signed by Coleman and West, by "R. H. Coleman," and was filed on the 14th day of September, 1898, in the office of the recorder of Sevier county, Arkansas.

The mortgage covered certain machinery, lumber and logs then on the ground at the point where the machinery was located, with the additional provision in the mortgage that it should take in and cover all of the lumber and logs thereafter brought to and manufactured at said mill, until full payment had been made of certain indebtedness referred to in the mortgage, and other indebtedness accruing thereafter between the parties. Subsequent to the execution of this mortgage, Coleman & West carried on a sawmill business, and sold and disposed of some nine carloads of lumber manufactured at the mill to the appellant herein, who was located at Mena, in a county different from that of the location of the mill. It appears that A. West, the co-defendant of appellant, was authorized to sell this lumber, with the condition that he was to make up bills of lading in the name of Williamson Bros., and that all accounts of payment should be made to them.

The decree was in favor of appellees against appellant Morton.

*Pole McPhetrige,* for appellant.

A mortgage on goods left in the hands of the mortgagor with power to sell would be fraudulent as against third parties. 39 Ark. 325; 59 Ark. 280. A mortgage, though executed with proper notice and in good faith and upon good consideration, may be held fraudulent if the facts justify. 41 Ark. 186. Secret instructions to the broker would not affect the rights of the purchaser who had no notice of them. Wade, Notice, § § 257, 70, 71.

*Scott, Lake & Head,* for appellees.

In equity a mortgage can be made which will cover future advances of both personal and real property. 30 Ark. 56; 35 Ark. 321; 52 Ark. 441; Jones, Chat. Mortg. § 173; 60 Ark. 595; 65 Ark. 33. The description of the property was sufficient. 46 Ark. 70; 68 Ark. 256; Jones, Chat. Mortg. (4th Ed.) § 172; 52 Ark. 371; 51 Ark. 410. The mortgage was not fraudulent. 39 Ark. 325; 41 Ark. 188; 46 Ark. 122. The principal will be bound by the acts of his agent, if within the scope of the general authority conferred upon him, although he may violate his private instructions prohibiting the exercise of such authority under the particular circumstances. Story, Ag. (4th Ed.) 151; Mech. Ag. § 289; 62 Ark. 33. One who deals with a special agent must enquire into his authority. 9 Wall. 766; 23 Ark. 41; 31 Ark. 212.

Wood, J. (after stating the facts). We are asked to decide two questions:

1. Was the description in the mortgage too general to constitute a lien upon the lumber sold to appellant? The clause, "all the lumber and logs now on the ground, and all that may be put on the ground and sawed by us until final settlement of our account with Williamson Bros.," created a lien upon the lumber that was sold to appellant. Judge Story in *Mitchell* v. *Winslow,* 2 Story, 630, says: "It seems to me the clear result of all the authorities, that wherever the parties, by their contract, intend to create a positive lien or charge, either upon real or personal property, whether it is then *in esse* or not, it attaches in equity as a lien or charge upon the particular property as soon as the assignor or contractor acquires a title thereto." This language

has been often quoted in our decisions, and declares the doctrine long ago approved by this court. *Apperson* v. *Moore,* 30 Ark. 56; *Little Rock & Fort Smith Ry. Co.* v. *Page,* 35 Ark. 321; *Williamson* v. *Cunningham,* 52 Ark. 441; *Martin* v. *Schichtl,* 60 Ark. 595.

The lumber, though not in existence when the mortgage was executed, was clearly in contemplation of the parties to the mortgage. *Wright* v. *Bircher,* 72 Mo. 179. There is no reason for any distinction between a mortgage of future crops to be grown by the mortgagor and a mortgage of lumber to be manufactured in the future. In Missouri there was a mortgage on "all spelter made after said date from ore then on hand, or which should thereafter be purchased for use at said works," and the supreme court held that "a manufacturer may make a valid mortgage of raw material to be purchased in the future, and the product to be made therefrom." *Frank* v. *Playter,* 73 Mo. 672; Jones, Chattel Mortgages, 305. That is good, and applies here.

2. Was the mortgage fraudulent by reason of the fact that the mortgagors were allowed to remain in possession of and to sell the lumber as it was manufactured? The mortgage was of record, and therefore was constructive notice to the appellant of appellee's lien upon the lumber. The mortgage contained this provision: "But in default of payment by the time specified, or should we suffer to be removed or disposed of, or attempt to remove or dispose of, any of said personal property, then said Williamson Bros. are hereby empowered to take immediate possession of any or all of such property," etc. This was notice to appellant that the mortgagors had no right to "remove or dispose of any of the lumber without the consent of the mortgagees, and it was sufficient to put appellant upon inquiry as to the right of the mortgagors to make the sale to him. Such inquiry would have revealed to appellant the fact that the mortgagors, in selling the lumber to him, were acting as the special agents of appellees, under special directions and limitations. The proof showed that the mortgagors were allowed by the mortgagees to ship and sell lumber to other parties only when such parties would give more than the mortgagees for such lumber. But it was the express understanding between the mortgagors and mortgagees that in such cases the mortgagees were to

be the shippers, and the lumber was to be shipped in their name, and the proceeds were to be sent directly to them by the purchaser. This is not the case of a mortgagor left in the possession of merchandise which he had mortgaged, and selling same in the regular course of business. Here the mortgagors were not allowed to sell to any one except the mortgagees, unless upon certain conditions, which showed clearly that the mortgagees were to get the proceeds of such sales to apply on the mortgage debts. In making such sales the mortgagors acted as the agents of the mortgagees. Herein this case differs materially from the case of *Fletcher* v. *Lund,* 39 Ark. 325; *Martin* v. *Ogden,* 41 Ark. 186; *Gauss* v. *Doyle,* 46 Ark. 122, and all other similar cases where the mortgagor, by express provision in the instrument, or by extraneous proof, is shown to have been left in possession of the mortgaged merchandise with power to sell same in due course of trade, on his sole account, and not as the agent or trustee for the mortgagee. According to the rules prescribed by our own court, and the authorities generally for determining the fraudulent or nonfraudulent character of such instruments, this mortgage was valid. There was no inherent vice upon its face, and the chancellor, upon the facts, found that there was no fraud in its execution that would protect the appellant as an innocent purchaser, and the chancellor was right. See Arkansas cases *supra,* and *Ephraim* v. *Kelleher,* 18 L. R. A. 604, and authorities cited.

Affirmed.